## Stodghill v. Crafton.

## Thixton v. Crafton.

(Decided June 19, 1925.)

## Appeals from Bullitt Circuit Court.

1. Pleading—Allegation That Cross-Defendant Was Liable Held a Conclusion—Cross-Petition by Surety Against Cosurety Held Insufficient.—In action against plaintiff's agent and sureties on his bond, allegation of cross-petition of surety against cosurety on earlier bonds that such cosurety became and was liable with defendant for any indebtedness for certain years was conclusion, and, in view of absence of averment that cross-petitioner had paid joint obligation, and was entitled to contribution, cross-petition was insufficient.

2. Pleading—Cross-Petition, Alleging That Former Cosurety Signed and Executed Contract of Suretyship, Without Setting Out Terms, Held Bad on General Demurrer.—In action against plaintiff's agent and sureties on his bond, cross-petition by surety, alleging that former cosurety signed and executed contract, but not setting forth terms and conditions thereof, was bad on general demurrer.

3. Pleading—On Sustaining General Demurrer, Court Should Give Pleader Reasonable Opportunity to Amend, if Desired.—On sustaining general demurrer to pleading, if pleader indicates desire to plead further, reasonable opportunity should always be given to amend.

4. Pleading—On Failure of Pleader to Request Opportunity to Amend Pleading to Which General Demurrer is Sustained, Dismissal of Pleading is Proper.—Where defendants, to whose cross-petitions general demurrer was sustained, did not offer to file amended cross-petitions or indicate desire to plead further, dismissal of cross-petition was proper.

W. S. HEIDENBERG and CHAS. CARROLL, for appellants.

THAD CHEATHAM for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

About the year 1914, the W. T. Rawleigh Company, incorporated, of Illinois, entered into a written contract with E. Fitch, of Mt. Washington, Kentucky, in which contract the company was known as the seller, and Fitch, as buyer, whereby the former employed the latter to represent it in the sale of its manufactured products in Kentucky, the seller to receive a certain commission on the goods sold and to be charged with all goods shipped to customers and to collect all bills for goods sold, remit-

ting the wholesale price and retaining the balance as commission.

The provisions of the contract, so far as relevant, read:

"Witnesseth: Whereas said buyer desires to purchase of the seller at wholesale, such of its manufactured products as the seller shall hereafter determine to sell to the said buyer; the kind and quality of which is to be optional with the said seller.

"The seller agrees to sell and deliver to the buyer f. o. b. Freeport, Illinois, or at its option f. o. b. its branch houses or at any other point agreed upon, such of its products as hereinabove specified and at current wholesale, unless prevented by strikes, fires, accidents or other causes beyond its control; the said buyer to furnish signed orders for such goods.

"The buyer agrees to pay said seller the invoice price for all products so purchased under this agreement, also any balance due the seller at the date of the acceptance of this renewal contract, by cash, or by installment payments satisfactory to the seller, subject to the discounts as shown in current discount sheets and subject to paragraph 6 hereof."

To the contract was attached a bond or guarantee which, after the preamble, contains these provisions:

"We, the undersigned, do hereby jointly and severally guarantee unto said, The W. T. Rawleigh Company, the above named seller, unconditionally, the payment in full of the balance due or owing said seller, on account, as shown by its books at the date of the acceptance of this contract of guarantee by the seller, and the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms of the above and foregoing instrument by the buyer named as such therein, and to all of the terms, provisions and agreements contained in said instruments we fully assent and agree, hereby waiving notice of acceptance by the seller, of this contract of guaranty, and all notice of any nature whatsoever, and agree that the written acknowledgment by said buyer of the amount due or owing on his account, or that any judgment rendered

against him for moneys due the seller, shall in every and all respects bind and be conclusive, jointly or severally, against the undersigned.''

The contract and the bond were renewed each year and Fitch continued to be the representative of the Rawleigh Company through the years 1914, 1915, 1916, 1917, 1918, 1919, and 1920.

For the year 1919, and perhaps other years, appellee J. B. Crafton was surety on the bond but he did not sign the bond for the year 1920, although appellants, Stodghill and Thixton, signed it for 1920, and were on Fitch's bond for previous years. Fitch failed to pay the company for all the goods purchased for either of the years named, and at the end of 1920 was indebted to the company in a sum aggregating several hundred dollars.

The suit was commenced by the Rawleigh Company against Fitch, its agent, and his sureties for 1920, Stodghill and Thixton, to recover the balance due, alleged to be $1,447.74. Stodghill answered and denied his liability on the bond and further pleaded that by the terms of the contract which he guaranteed, Fitch was to pay the Rawleigh Company the full sum due each year and that he did not know the company had failed to collect from Fitch for goods sold him in previous years, at the time he signed the guaranty in question and that he would not have signed the guaranty but for his belief that Fitch had complied with this contract by paying all past due bills; that appellee, Stodghill, was only liable for the current amount due by Fitch, in any event, and not for balances carried over from previous years.

The third paragraph of the answer of appellant Stodghill is a cross-petition against appellee, J. B. Crafton, and reads as follows:

''Defendant further says that one J. B. Crafton became and was liable with this defendant for any indebtedness of defendant, Fitch, to plaintiff for the years 1917, 1918, 1919, and together with one H. P. Thixton, which indebtedness it is alleged amounts to $602.28.

''Defendant says that if he is liable for any part of said indebtedness, then said defendant and each, under a contract between them and each, and plaintiff, become jointly liable with this defendant for said sum.

"Defendant says that his co-defendant, H. P. Thixton, is now and has been for many years wholly insolvent, and no part of said sum can be realized out of the estate of said Thixton by execution or otherwise."

The answer and cross-petition of appellant Thixton was in substance the same as that of appellant, Stodghill and contains a paragraph, reading:

"Now comes the defendant, Herbert Thixton, and for further answer and counterclaim herein states that J. B. Crafton, of Mt. Eden, Kentucky, signed and executed together with this defendant and his co-defendant, J. L. Stoghill, contracts for the years 1917, 1918, and 1919, and that this defendant should be held liable to plaintiff for any sum or sums due under said contracts during the years aforesaid; that said J. B. Crafton is proportionately liable therefor together with this defendant and his co-defendant, J. L. Stodghill, and should contribute one-third of any amount that might be adjudged in this action due or owing the plaintiff herein."

A general demurrer was interposed to the answer and each paragraph thereof by both appellants, Stodghill and Thixton, and sustained as to the paragraphs above copied, the order reading:

"The court being sufficiently advised sustains said demurrer and said cross-petition is dismissed, to all of which defendants, Stodgill and Thixton, except."

On final submission the court adjudged the Rawleigh Company recover of appellants, Stodghill and Thixton, the sum of $1,250.00 with interest from date of judgment until paid, and that Stodghill and Thixton recover the same amount of Fitch. Stodghill and Thixton alone appeal from the judgment dismissing their cross-petition against Crafton, but make no complaint as to the judgment against them in favor of the Rawleigh Company.

The question presented is as to the sufficiency of the averments of the cross-petition to constitute a cause of action in favor of appellants against appellee Crafton.

In their brief appellants say: "Only two questions are involved on this appeal, (1) did the court err in sus-

taining the demurrer of appellee, Crafton, to the cross-petitions of appellant Stodghill and Thixton and dismissing said cross-petitions without giving either of appellants an opportunity to amend his pleadings if he so desired; and (2) did the cross-petition state a cause of action against J. B. Crafton and was he a necessary or proper party to the action?''

It must be borne in mind that both appellee Crafton and the Rawleigh Company demurred generally to the separate answers of appellant Stodghill and Thixton. Appellants contend that the court was in error in sustaining the demurrer and in dismissing their cross-petition without giving them an opportunity to amend or to further plead; and also in error because the averments of the cross-petition were sufficient to constitute a cause of action against Crafton in favor of the appellants.

For appellee it is insisted that as he did not sign the bond of Fitch for the year 1920, and that bond superseded all bonds previously made by Fitch to the Rawleigh Company, thus constituting a novation, he (appellee Crafton) was not liable in any event, either to the Rawleigh Company or to appellants, Stodghill and Thixton, who were joint sureties with him on bonds made for years previous to 1920. In support of this contention appellees cite the cases of Stewart v. Grove, 5 R. 687, and Smith v. Young, 11 Bush, 395, holding in substance that where a new note is executed by part of the obligors in the old note and its acceptance by the holder in lieu of the old note is a complete novation, the old debt being satisfied and a new one created. These cases are authority for a principle that is quite, if not absolutely, like the one before us, as it appears, though we shall not rest our decision of this case upon it, being of opinion that the general demurrer was properly sustained to the paragraph of the answer denominated a cross-petition, upon another ground. Referring to the cross-petitions of appellants, copied above, it will be noticed that they contain no averment or averments which would entitle appellants to recover of Crafton under existing conditions. The cross-petition of Stodghill says: ''One J. B. Crafton became and was liable with this defendant for any indebtedness of defendant, Fitch, to plaintiff for the years 1917, 1918 and 1919.''

That averment is a conclusion and not a statement of fact. Facts showing that Crafton became ''liable''

instead of the bold averment that he "became liable" should have been set forth in the pleading. Neither is there an averment in either cross-petition to the effect that appellants have paid the joint obligation and are entitled to contribution.

Appellant, Thixton's, cross-petition is almost as defective as that of appellant, Stodghill, although it is averred by Thixton that Crafton signed and executed a contract, but the nature, terms and conditions of the contract are not set forth. If Crafton signed the contract for Fitch he was only bound by its terms and he certainly could not be held liable as surety for Fitch without it being made to appear both by averment and proof that the terms of his contract had been violated by him and that if Crafton had kept the terms of his contract he would have paid the amount sought to be recovered. Both cross-petitions are subject to this criticism. The cross-petitions were so inaptly drafted that they were subject to general demurrer and the trial court had no option but to sustain the demurrer to them both.

It is next insisted by appellants that the court should not have dismissed their cross-petitions without giving them an opportunity to amend. Ordinarily the trial court affords the pleader, when a general demurrer is sustained to his pleading, a reasonable opportunity to amend the pleading and supply the averments necessary to make the pleading good, and this should always be done provided the pleader indicates a desire to further plead. It is not incumbent upon the court to inquire of the pleader whether he wants to file an amendment, but the duty rests upon the pleader to inform the court of such desire, if he entertains such. The pleader should offer an amended pleading to conform to the ruling of the court if he desires to plead further, or should indicate to the court a desire to further plead and ask the indulgence of the court while he prepares the same, failing in which the court is authorized to assume, and will be within its rights, that the pleader does not desire to further plead, and dismiss the pleading to which the demurrer was sustained. Wilson v. Commonwealth, 99 Ky. 167.

As appellants did not offer to file an amended cross-petition as against Crafton, the court, therefore, did not err in dismissing the cross-petition.

Judgment affirmed.